COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-337-CV

IN THE INTEREST OF E.N.M., 

MINOR CHILD

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

After a bench trial, the trial court terminated Appellant Mary S.’s parental rights to her child E.N.M.  In one issue, Mary contends that the evidence is factually insufficient to support the best interest finding.  Because we hold that the evidence is factually sufficient to support the best interest finding, we affirm the trial court’s order of termination.

At the time of trial, Mary had five children, ranging in age from nine years to three months, and all of them had been removed from her custody.  Mary was in jail in February 2004 when her first two daughters were removed from the man she left them with because he sexually abused them.  A month later, her son was also removed.  In May 2004, Mary was released from jail and continued to live with the man for a time.

E.N.M. was born in February 2005, and the Texas Department of Family and Protective Services (“CPS”) took her into custody when the hospital discharged her.  E.N.M.’s older siblings were still in CPS’s custody.  At the time of E.N.M.’s birth, Mary lived with a felon.  CPS had reason to believe that he was also a sexual perpetrator and that he had committed domestic violence against Mary.  The man had been barred from the government housing where Mary lived, and Mary had received notice that she would be evicted.  Six days after the birth, she was evicted.  Mary moved in with her stepmother, who had charges then pending for possession of precursor chemicals for the manufacture of methamphetamine.

In May 2005, with CPS and CASA’s help, Mary obtained housing and furnishings.  On May 23, 2005, CPS returned E.N.M. and her older brother to Mary in an attempt at reunification.  The two older sisters were already in the permanent managing custody of CPS but visited during the weekend of June 4.  They reported that there was no food or electricity and that a strange man was there during the visit.  Mary denied that anything wrong had happened.  The electricity was turned back on June 10, but on June 21, Mary tested positive for cocaine.  On June 24, CPS removed E.N.M. and her brother again.  Less than two weeks later, Mary was fired.

In August, Mary got a new job, but her hair follicle drug test “caused concern.”  Mary did not take the court-ordered drug test on September 8, 2005, and refused some drug tests thereafter.  She did not attend a Narcotics Anonymous meeting after May 2005.

In September, Mary’s water was cut off, and she was evicted again.  She did not attend court-ordered counseling, pay child support, or find stable housing in the months thereafter, and the drug tests she did take continued to cause concern.  In December she moved again, this time to a hotel.

In April 2006, Mary was working for Servicemaster.  In May, she quit when her fifth child was born.  Both of them tested positive for marijuana at that time.  Mary did not remember at the time of trial which other drug—methamphetamine or amphetamine—she tested positive for during May.  Mary has not held a job since that time, but testified at trial that she was trying to get a job at the state hospital and had also tried to get work at a couple of nursing homes and some motels.

She also testified that she was trying to get a voucher for section eight housing.  At the time of trial, Mary was in jail for unpaid tickets, but otherwise she lived with a woman with a CPS history and warrants pending; that was Mary’s sixth home since E.N.M.’s birth.

Mary testified that she did not pay child support for her children because they are her children, and it was not her choice to have someone else take care of them, but she later stated that she would probably pay child support if she had the money.  She testified that she sells her plasma for money.  Mary also testified that she uses drugs because she is depressed and that her children know that she uses drugs.  Mary admitted that she had used drugs within the month before trial, but she said that she would stop smoking marijuana to get a job.  Evidence showed that Mary’s noncompliance with the trial court’s orders is due not to a lack of ability but is instead due to her lack of motivation, a lack of concern, and a refusal to put her children’s needs before her own.

E.N.M. and her brother live together in a potential adoptive home.  E.N.M. is bonded with her brother and her foster mother, and the interaction with the foster parents is “wonderful.”  The State’s evidence showed that the bond between E.N.M. and Mary is minimal; Mary testified that they have a bond “to a certain extent.”  In the event of an adoption, CASA would request that E.N.M. and her brother have some contact with the sisters in the permanent managing custody of CPS.

Based on the applicable standard of review,
(footnote: 2) we hold that the evidence is factually sufficient to support the trial court’s finding that termination of Mary’s parental rights is in E.N.M.’s best interest, overrule Mary’s sole issue, and affirm the trial court’s order of termination.

PER CURIAM

PANEL F: DAUPHINOT, J.; CAYCE, C.J.; and MCCOY, J.

DELIVERED:  May 3, 2007

FOOTNOTES
1:
See 
Tex. R. App.
 P. 47.4.

2:
See
 
In re C.H.
, 89 S.W.3d 17, 25, 28 (Tex. 2002) (providing factual sufficiency standard of review); 
Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976) (providing factors to consider in determining best interest).